UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20232-Civ-COHN
    (02-20130-Cr-COHN)
MAGISTRATE JUDGE P. A. WHITE

TROY CANNON,                          :

            Movant,                   :

v.                                    :          REPORT OF
                                                 MAGISTRATE JUDGE
UNITED STATES OF AMERICA,             :

            Respondent.               :
_____

## Introduction

This matter is before this Court on the movant's motion to vacate, attacking his conviction and sentence for conspiracy to possess with intent to deliver five kilograms or more of cocaine, entered on a jury verdict in Case No. 02-20130-Cr-Cohn. The court has reviewed the motion with supporting memorandum, the government's response, the movant's reply, the Presentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

## Claims Raised

In his initial §2255 motion and amendments thereto, the movant raises the following claims:

> 1. The government violated his right to counsel. (Cv-DE#1:5; Cv-DE#2:1).
>
> 2. He was denied effective assistance of counsel, where his lawyer failed to request an inquiry into the government's violation as alleged in claim one. (Cv-

DE#1:5; Cv-DE#2:4).

3.     He was denied effective assistance of counsel, where his lawyer failed to object to an agent providing improper expert testimony, in violation of the movant's confrontation rights. (Cv-DE#1:5; Cv-DE#2:8).

4.     He was denied effective assistance of counsel, where his lawyer failed to object to the in-court identification and introduction of testimonial statements. (Cv-DE#1:5; Cv-DE#2:13).

5.     He was denied effective assistance of counsel, where his lawyer failed to exclude nonessential witnesses from the courtroom and to request inquiry into the violation of the sequestration rule. (Cv-DE#1:6; Cv-DE#2:17).

6.     He was denied effective assistance of counsel, where his lawyer failed to object to the admission of flight evidence and to the jury instruction on flight. (Cv-DE#1; Cv-DE#2:21).

7.     He was denied effective assistance of counsel, where his lawyer failed to request a limiting instruction as to drug quantity. (Cv-DE#1; Cv-DE#2:25).

8.     He was denied effective assistance of counsel, where his lawyer failed to request a missing witness instruction. (Cv-DE#1; Cv-DE#2:31).

9.     Counsel's cumulative errors warrant vacatur of his conviction. (Cv-DE#1; Cv-DE#2:36).

In a "Notice of Intent" filed August 17, 2007 (Cv-DE#15), the movant seeks to amend his §2255 motion to add an additional claim, as follows:

2

10. He was denied effective assistance of trial and appellate counsel, where his attorneys failed to:

    a. object to the impermissibly vague §851 information; and,

    b. adequately challenge the lawfulness of the wiretaps.

## Procedural History

On February 14, 2002, the movant and fifteen codefendants were charged by Indictment with numerous narcotics offenses. Specifically, the movant was charged with conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §841(a), 18 U.S.C. §841(b)(1)(A), and 18 U.S.C. §846, and forfeiture.[1] (Cr-DE#1). On August 23, 2002, the case was transferred to the Clerk's Fugitive Case File until the movant, who was a fugitive at that point, was apprehended by authorities. (Cr-DE#336). On September 3, 2003, the movant was arrested on unrelated charges in Virginia and then returned to the Southern District of Florida. (Cr-DE#s385,389). Prior to trial, the government filed an information pursuant to 21 U.S.C. §851 seeking an enhanced penalty based on the movant's prior felony convictions. (Cr-DE#420).

The movant filed a pretrial motion to suppress wiretap evidence (Cr-DE#438), and various motions in limine seeking to limit the government's use of 404(b) evidence at trial. (Cr-

---

[1] The movant was the only defendant to proceed to trial. Twelve coconspirators pleaded guilty and received sentences ranging from 8 to 151 months in prison, and charges were dismissed by the government as to two other coconspirators.

3

DE#s436,437,463). On March 11, 2004, following an evidentiary hearing, the court denied the suppression motion. (Cr-DE#s467,474). The movant proceeded to trial where he was found guilty as charged, following a jury verdict. (Cr-DE#494). The verdict included a finding that the amount of drugs involved in the offense was five kilograms or more of cocaine. (Cr-DE#494). On June 4, 2004, the movant was sentenced to a term of life imprisonment, followed by ten years of supervised release. (Cr-DE#500).

The movant appealed, raising the following claims[2]:

1.  The court erred by failing to transcribe tape recorded evidence at trial.

2.  He is entitled to vacatur of his conviction on the basis that the trial was replete with evidentiary errors made by the trial court.

3.  His sentence is unlawful based on recent Supreme Court decisions.

On September 19, 2005, the Eleventh Circuit Court of Appeals affirmed the judgment in a written but unpublished opinion. United States v. Cannon, 149 Fed.Appx. 93 (11th Cir. 2005); (Cr-DE#552). Certiorari review was denied on January 23, 2006. Cannon v. United States, 546 U.S. 1154 (2006). The judgment of conviction in the underlying criminal case became final at the latest January 23, 2006, when certiorari review was denied by the Supreme Court.[3] This

---

[2]The claims are gleaned from the written but unpublished appellate opinion (Cr-DE#552), and from the movant's initial brief on appeal, located on Westlaw, a legal research database, at United States v. Cannon, 2005 WL 4590317 (11th Cir. 2005).

[3]The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, United States v. Kaufmann, 282 F.3d 1336 (11th Cir. 2002). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be

4

motion to vacate was timely filed on January 21, 2007.[4]  (Cv-DE#1).

## Effect of Motion to Stay

Before turning to a discussion of the merits of the claims raised in this collateral proceeding, the Court must address the movant's recently filed motion to stay. (Cv-DE#16). In his motion to stay, the movant requests a stay of this proceeding in order to file a supplemental §2255 motion raising additional claims which he maintains he was unable to include due to "time constraints" in his initial §2255 motion filed on January 21, 2007. (Id.). The movant further claims that he is presently challenging in the state forum one of the prior convictions used to determine his guideline range in the underlying criminal case.  As discussed infra, it is the undersigned's recommendation that the movant's motion to stay be denied.

In order to stay federal proceedings and hold a habeas petition in abeyance pending, there must be exceptional or unusual circumstances. Christy v. Horn, 115 F.3d 201 (3 Cir. 1997); Parker v. Johnson, 988 F.Supp. 1474 (N.D.Ga. 1998). The general factors governing when it is appropriate to grant a stay pending the resolution of a claim in another forum include: 1) whether the petitioner is able to demonstrate a clear hardship or inequity if

---

filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate.  Sup.Ct.R. 13; see also, Close v. United States, 336 F.3d 1283 (11th Cir. 2003).

   [4]See: Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). Although the form motion shows the typed date as January 21, 2006, the supporting memorandum filed simultaneously with the motion shows January 21, 2007 as the date the motion and memorandum were executed by the movant. The clerk received the pleadings on January 30, 2007. In any event, under either January 21, 2006 or January 21, 2007 as the execution date and thus the filing date for purposes of the federal limitations period, this motion remains timely filed.

the action were to move forward; 2) the injury, if any, to the
respondent; and 3) the effect of the stay on the public interest,
including the "judiciary's interest in efficiency, economy, and
fairness." Hill v. Mitchell, 30 F. Supp.2d 997, 1000 (S.D. Ohio
1998)(citing Landis v. North American Co., 299 U.S. 248 (1936) and
applying factors to motion to stay habeas petition). In this case,
the movant has made no showing that these factors compel the
extraordinary action of holding this case in abeyance.

Moreover, a stay would not be appropriate under the
circumstances presented here because any amended motion raising new
claims would be time-barred.  The movant had one year from the time
his conviction became final on January 23, 2006 or until January
23, 2007 within to timely raise all cognizable claims.  In other
words, all claims must have been filed no later than February 21,
2007. At this juncture, the filing of an amended motion would be
time-barred as it is well beyond the one year federal limitations
period.  Any new issues that do not arise from the same
circumstances as raised in the original motion to vacate, would
thus be time-barred and not addressed on the merits. See Mayle v.
Felix,[5] 545 U.S. 644 (2005) and Davenport v. United States,[6] 217

---

[5]In Mayle, the Supreme Court held that "[A]n amended habeas petition ...
does not relate back (and thereby escape AEDPA's one-year time limit) when it
asserts a new ground for relief supported by facts that differ in time and type
from those in the original pleadings set forth." Mayle, 125 S.Ct. at 2566. The
Supreme Court explained that relation back is only allowable "when the claims
added by amendment arise from the same core facts as the timely filed claims, and
not when the new claims depend upon events separate in 'both time and type' from
the originally raised episodes." Id. at 2571 (citations omitted).

[6]In Davenport, the Court of Appeals held that a claim which was not part
of the original timely motion to vacate does not relate back to the original
claims and is time-barred if it does not arise out of the same conduct,
transaction or occurrence. However, in a post-Davenport decision, the Eleventh
Circuit explained that "[W]hen the nature of the amended claim supports
specifically the original claim, the facts there alleged implicate the original
claim, even if the original claim contained insufficient facts to support it. One
purpose of an amended claim is to fill in facts missing from the original claim."
United States v. Dean, 278 F.3d 1218, 1221-1222 (11th Cir. 2003).

F.3d 1341 (11 Cir. 2000); <u>see</u> <u>also</u>, <u>Pruitt v. United States</u>, 274
F.3d 1315 (11 Cir. 2001). The law is clear that in order for an
untimely claim to be considered, it must arise from the same facts
as the timely filed claim, not from separate conduct or occurrence.
<u>See</u> <u>Dean v. United States</u>, 278 F.3d 1218, 1222 (11th Cir. 2002);
<u>Fed.R.Cr.Proc.</u> 15(c). The untimely claims must have more in common
with the timely filed claim than the mere fact that they arose out
of the same trial and sentencing proceedings. <u>See</u> <u>Pruitt v. United
States</u>, 274 F.3d at 1319, <u>citing</u>, <u>United States v. Pittman</u>, 209
F.3d 314 (4th Cir. 2000); <u>United States v. Duffus</u>, 174 F.3d 333
(3rd Cir.), <u>cert. den'd</u>, 528 U.S. 866 (1999); <u>United States v.
Craycraft</u>, 167 F.3d 451 (8th Cir. 1999).

In this case, the movant's request for a stay in order to file
an amended motion raising new claims would be time-barred and
therefore a stay would not be appropriate. Although the Eleventh
Circuit has held that the limitations period may be equitably
tolled when a movant's timely filing of a motion to vacate is
impeded by extraordinary circumstances beyond his control and
unavoidable even with due diligence, <u>Sandvik v. U.S.</u>, 177 F.3d 1269
(11 Cir. 1999), no such showing has been made in this case to
warrant equitable tolling of the movant's time-barred claims.

The movant maintains that from January, 2006 through August,
2006, he was in state custody and had no access to federal legal
materials. Bare allegations of denial of access to a law library
are not sufficient, standing alone, to entitle a petitioner to
equitable tolling. <u>See</u>, <u>e.g.</u>, <u>Miller v. Marr</u>, 141 F.3d 976, 978 (10
Cir. 1998)(stating that "Mr. Miller has provided no specificity
regarding the alleged lack of access and the steps he took to
diligently pursue his federal claims.... It is not enough to say
that the Minnesota facility lacked all relevant statutes and case

7

law or that the procedure to request specific materials was inadequate."); see also, Akins v. United States, 204 F.3d 1086 (11th Cir. 200)). Instead, a movant must come forward with evidence regarding the steps he took to diligently pursue his remedies during the time that he was deprived of access to legal materials. The movant's conclusory allegations regarding inadequate access to federal legal materials is insufficient to justify equitable tolling.[7] The movant's failure to do so renders his argument for equitable tolling unpersuasive. See Gonzales v. Williams, 60 Fed.Appx. 245, 2003 WL 1384028 (10 Cir. 2003)(holding that finding that habeas petitioner was not entitled to equitable tolling of one-year limitations period on basis of lack of access to law library was not reasonably debatable, because petitioner offered no evidence regarding steps he took to diligently pursue remedies during time he was deprived of access to law library but relied solely on bare allegations of temporary denial of access without explaining his delay after he was transferred to a prison with legal materials).

Alternatively, the movant also appears to argue that one of his prior convictions used to determine his guideline range is unlawful and is currently on appeal in the state forum. (Cv-DE#16). The law is clear, however, that once the movant successfully attacks in the state forum his prior state conviction used to determine his criminal history points in this case, at that time he may then seek to reopen and reduce the federal sentence. See United States v. Walker, 198 F.3d 811, 813 (11 Cir. 1999).

It is well settled that collateral attacks on prior

---

[7]Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in her pro se petition to be of probative value. Ross v. Estelle, 694 F.2d 1008, 1011-12 (5 Cir. 1983).

convictions are generally prohibited in federal sentencing proceedings, and may be raised only when the conviction was obtained in violation of the defendant's right to counsel. <u>United States v. Phillips</u>, 120 F.3d 227, 231 (11 Cir. 1997)(<u>citing</u>, <u>Custis v. United States</u>, 511 U.S. 485 (1994)); <u>United States v. Farris</u>, 77 F.3d 391, 397 & n. 10 (11 Cir.), <u>cert. denied</u>, 519 U.S. 896 (1996). Moreover, the Supreme Court has held that a federal prisoner who has failed to pursue available remedies to challenge a prior conviction (or has done so unsuccessfully) may not collaterally attack that conviction through a motion pursuant to 28 U.S.C. §2255 directed at the enhanced federal sentence. <u>Daniels v. United States</u>, 523 U.S. 374 (2001), <u>citing</u>, <u>Custis v. United States</u>, 511 U.S. 485, 493 (1994)(only prior convictions which may be collaterally attacked at sentencing were those obtained in violation of the right to appointed counsel). The movant has also not shown that the prior conviction he is challenging in this proceeding has been vacated, and there is nothing of record to support such a conclusion. Thus, there appears to have been no legal basis to challenge the validity of underlying state conviction at the time of the movant's sentencing in federal court.

Moreover, even if one of the prior state convictions were vacated, there were still more than sufficient prior convictions upon which the government could rely upon in support of the §851 information. Under these circumstances, a stay would not be appropriate and the movant's request should therefore be denied.

<u>Discussion of the Claims</u>

In this collateral proceeding, the movant raises multiple claims which challenge the court's rulings and counsel's effectiveness. In order for the movant to prevail on a claim of

ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995).

Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11 Cir. 1994).

Bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See United States v. Robinson, 64 F.3d 403, 405 (8 Cir. 1995), Ferguson v. United States, 699 F.2d 1071 (11 Cir. 1983), United States v. Ammirato, 670 F.2d 552 (5 Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5 Cir. 1979).

10

In **claims one and two**, the movant asserts he was denied effective assistance of counsel, where his attorney failed to request an inquiry into the government's violation of the movant's right to counsel. (Cv-DE#1:5; Cv-DE#2:1,4). According to the movant, the government violated his rights when they used his nephew, Johnny Weeks, as a government undercover agent, to elicit incriminating information from the movant, in violation of the Supreme Court's decision in <u>Massiah v. United States</u>, 377 U.S. 201 (1964). (Cv-DE#2:2-4).

The movant contends that Weeks, the movant's nephew and fellow inmate, was acting as a government informant when he elicited information from the movant regarding his drug activities. The movant claims that Weeks entered into a plea agreement which directed that he gather information that would assist the government in its prosecution of the movant, and that in exchange for this information, Weeks was promised a downward departure at sentencing.

During trial, Weeks testified regarding his involvement in drug activities with the movant, the operation of the conspiracy, and completed the story of the conspiracy for the jury. (Cr-DE#518:380-430,491-496). At no time, however, was any information elicited or provided to the jury regarding the nature or substance of any conversation which occurred between Weeks and the movant while the movant was awaiting trial at the local federal prison.

In <u>Massiah</u>, the Supreme Court held that a defendant's Sixth Amendment right to counsel was violated when incriminating statements "deliberately elicited from him after he had been indicted in the absence of counsel" were used against him at trial.

11

<u>Massiah</u>, <u>supra</u> at 206. Likewise, the Supreme Court in <u>United States v. Henry</u>, 447 U.S. 264 (1980) concluded that federal agents had violated the defendant's Sixth Amendment right to counsel "[b]y intentionally creating a situation likely to induce [the defendant] to make incriminating statements without the assistance of counsel." <u>Henry</u>, <u>supra</u> at 274.

The Supreme Court in <u>Kuhlmann v. Wilson</u>, 477 U.S. 436 (1986) addressed, however, whether the Sixth Amendment forbids admission in evidence of an accused's statements to jailhouse informant who was placed in close proximity to a defendant. In <u>Kuhlmann</u>, the court concluded that:

> the primary concern of the *Massiah* line of decisions is secret interrogation by investigatory techniques that are the equivalent of *direct police interrogation*. Since 'the Sixth Amendment is not violated whenever--by luck or happenstance--the State obtains incriminating statements from the accused after the right to counsel has attached," a defendant does not make out a violation of that right simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police. Rather, the defendant must demonstrate that the police and their informant took action, beyond merely listening, that was designed to elicit incriminating remarks.

<u>Id</u>. at 436. <u>See also</u>, <u>Stano v. Butterworth</u>, 41 F.3d 942, 977-78 (11th Cir. 1995); <u>Lightboune v. Dugger</u>, 829 F.2d 1012, 1021 (11th Cir. 1987); <u>United States v. Hicks</u>, 798 F.2d 446, 449 (11th Cir. 1986).

"In order to establish a violation of the Sixth Amendment in a jailhouse informant case, the accused must show: (1) that a fellow inmate was a government agent; and (2) that the inmate deliberately elicited incriminating statements from the accused." <u>Lightbourne</u>, <u>supra</u> at 1020; <u>see also</u>, <u>United States v. Gaddy</u>, 894

12

F.2d 1307, 1313 (11th Cir. 1990); <u>Depree v. Thomas</u>, 946 F.2d 784, 793 (11th Cir. 1991). The Sixth Amendment right to counsel is not implicated "'when after the right to counsel has attached, statements by a defendant are made to an individual who is not an agent for the Government, although he may be a Government informant. This is so regardless of whether the statements were 'deliberately elicited'," by an informant. <u>Stano</u>, <u>supra</u> at 978, <u>quoting</u>, <u>United States v. Taylor</u>, 800 F.2d 1012, 1015 (10th Cir. 1986).

In this case, the movant has failed to demonstrate that Weeks was acting as a government agent when he engaged in conversations with the movant regarding the drug activities. The movant relies on Weeks' plea agreement with the government to establish that Weeks was acting as an agent for the government. According to the movant, Weeks was promised a downward departure at sentencing or the filing of a Rule 35 motion based on substantial assistance. However, the existence of a broad agreement, which only provides for cooperation in the hopes of gaining a reduction in sentence, does not establish that Weeks was operating as a government agent. At best, the movant has merely demonstrated that Weeks was working as an informant in the hopes of getting a Rule 35 sentence reduction, but not that Weeks was acting as a government agent. The fact that Weeks hoped to benefit from reporting the movant's statements to the government does not transform Weeks into a government agent. Weeks motives alone cannot make him an agent of the government even if the government knew and understood that his motives probably were self-serving and related to getting cooperation or a reduction in sentence. <u>See</u> <u>Lightbourne</u>, 829 F.2d 1021. The movant has thus failed to establish that Weeks was acting as a government agent, and as such, no Sixth Amendment violation has been demonstrated in collateral proceeding.

To the extent the movant means to argue that he is entitled to an evidentiary hearing on this claim, the burden is on the movant to establish the need for an evidentiary hearing. <u>Birt v. Montgomery</u>, 725 F.2d 587 (11th Cir.), <u>cert. den'd</u>, 469 U.S. 874 (1984). In considering whether a petitioner has satisfied that burden, a district court "will not 'blindly accept speculative and inconcrete claims.'" <u>Dickson v. Wainwright</u>, 683 F.2d 348, 351 (11th Cir. 1982). Thus, a court is not required to conduct an evidentiary hearing where, as here, a movant makes a conclusory allegation unsupported by the evidence. <u>Lindsey v. Smith</u>, 820 F.2d 1137 (11th Cir. 1987). The movant as failed to establish a Sixth Amendment violation, and the record strongly suggests that Weeks acted solely on his own to secure a better sentence for himself.

Alternatively, the movant argues that the government violated <u>Jencks</u>[8] when it failed to provide the defense with statements and debriefing made by Weeks. (Cv-DE#2:3).

The Jencks Act, 18 U.S.C. §3500 and <u>Fed.R.Cr.P.</u> 26.2, provides that after a witness, other than the defendant, has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the government or the defendant to produce for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified. <u>Id</u>.

In this case, the government provided all information regarding Weeks' plea, including a copy of the plea agreement and judgment of conviction to counsel prior to trial. <u>See</u> Cr-DE#407.

---

[8]<u>Jencks v. United States</u>, 353 U.S. 657 (1957).

The movant appears to be embarking on a fishing expedition, attempting to reinforce his assertions that Weeks was acting as an alleged government agent.

In **claim three,** the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to object to Special Agent Kevin O'Rourke providing improper expert testimony without a proper foundation, in violation of the movant's confrontation rights. (Cv-DE#1:5; Cv-DE#2:8). According to the movant, Agent O'Rourke testified to a myriad of items, including criminal activities surrounding the Triangle area, the movant's role in the organization, and the meaning of code words. (Cv-DE#2:8). The movant claims that the evidence against him consisted of wiretaps and the testimony of government informants, and therefore, without an interpretation of the wiretaps, there would not have been sufficient evidence upon which to convict him. (Cv-DE#2:10-12).

The substantive issue underlying this ineffective assistance counsel claim was raised and rejected on direct appeal. See United States v. Cannon, 149 Fed.Appx. 937, 941 (11th Cir. 2005); (Cr-DE#552). In rejecting the claim, the Eleventh Circuit concluded correctly that the district court did not err in permitting the officer to testify regarding various code words for drugs and quantities based on their field of expertise. Id.

Thus, the presentation of the claim in this §2255 proceeding in the guise of an ineffective assistance of counsel claims adds nothing of substance which would justify a different result. See Hobson v. United States, 825 F.2d 364, 366 (11th Cir. 1987)(claim raised and considered on direct appeal precludes further review of the claim in a §2255 motion), vacated on other grounds, 492 U.S.

913 (1989); <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000); <u>Webb v. United States</u>, 510 F.2d 1097 (5th Cir. 1975); <u>Belford v. United States</u>, 975 F.2d 310, 313 (7th Cir. 1992), <u>overruled on other grounds by</u> <u>Castellanos v. United States</u>, 26 F.3d 717 (7 Cir. 1994); <u>Graziano  v.  United  States</u>, 83  F.3d  587  (2d  Cir. 1996)(Collateral attack on a final judgment in a criminal case is generally available under §2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice.). Notwithstanding, as the claim is devoid of merit, it will also be briefly addressed <u>infra</u>.

The movant claims that Agent O'Rourke was unlawfully permitted to  testify  regarding  the  meaning  of  code  words  on  taped conversations. (Cr-DE#517:104). Pursuant to <u>Fed.R.Evid.</u> 701, "[I]f a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based  on  scientific,  technical,  or  other  specialized  knowledge within the scope of Rule 702." Eleventh Circuit precedent makes clear that officers can testify as lay witnesses "based upon their particularized knowledge garnered from years of experience within the field." <u>Id</u>.; <u>United States v. LeCroy, Jr.</u>, 441 F.3d 914 (11th Cir. 2006); <u>Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.</u>, 320 F.3d 1213, 1223 (11th Cir. 2003); <u>United States v. Tinoco</u>, 304 F.3d 1088, 1119-1120 (11th Cir. 2002). In <u>Tampa Bay</u>, the court explained that police officers may testify under amended Rule 701 as long as their testimony was helpful to the jury and relevant to the issues presented in the case. <u>Id</u>. at 1223.

In this case, Agent O'Rourke testified regarding code words and their meanings. (Cr-DE#517:95-190,200-05). The agent listened to hundred of hours of taped conversations and was more than qualified to testify about his perception of what was transpiring in the conversations. That testimony was clearly relevant and helpful to the jury, and thus was admissible. Although the Eleventh Circuit has approved expert testimony discussing drug trafficking codes, neither Rule 702 nor case law interpreting it suggests that Rule 702 is the sole vehicle by which such testimony may admitted. See United States v. Carrazana, 921 F.2d 1557, 1567-68 (11th Cir. 1991); United States v. Brown, 872 F.2d 385, 392 (11th Cir. 1989). Thus, the movant cannot establish deficient performance or prejudice arising from counsel's failure to preserve this issue at trial, and is therefore entitled to no relief on the claim.

Alternatively the movant appears to argue that counsel was ineffective for failing to object or move for a mistrial based on a violation of his right to confront witnesses, citing Crawford v. Washington, 541 U.S. 36 (2004).[9] According to the movant, O'Rourke testified regarding the substance of the wiretaps, giving his interpretation of coded conversations which the movant had with other witnesses.

Hearsay "is a statement, other than one made by the declarant

---

[9]In Crawford, the Supreme Court held that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is ... confrontation." 541 U.S. at 68-69. This holding abrogated Ohio v. Roberts, 448 U.S. 56 (1980), which had allowed the admission of an unavailable witness' statement against a criminal defendant if the statement bore adequate indicia of reliability, a test met when the evidence either fell within a firmly rooted hearsay exception or bore particularized guarantees of trustworthiness. Crawford, 541 U.S. at 68-69. In Crawford, the Supreme Court established a rule that, "[w]here testimonial evidence is at issue ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 68.

while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." <u>Fed.R.Evid.</u> 801(c). Hearsay is inadmissible unless the statement is not hearsay as provided by <u>Fed.R.Evid.</u> 801(d), or falls into one of the hearsay exceptions enumerated in Rules 803, 804, and 807 of the Federal Rules of Evidence. Moreover, if hearsay is "testimonial," that is, for example, "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." <u>Crawford v. Washington</u>, 541 U.S. 36, 52 (2004). The Confrontation Clause[10] prohibits its admission at trial unless (1) the declarant is unavailable, and (2) the defendant has had a prior opportunity to cross-examine the declarant. <u>See</u> <u>Crawford</u>, <u>supra</u> at 59, 68.

While the Supreme Court has not clarified which statements are in fact "testimonial," it has provided some guidance on the term's meaning. It defined "testimony" as "typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" <u>Id.</u> at 51 (<u>quoting</u> 1 N. Webster, An American Dictionary of the English Language (1828)). Thus, "formal statement[s] to government officers" are generally testimonial. <u>Crawford</u>, 541 U.S. at 51. So is "ex parte in-court testimony or its functional equivalent--that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." <u>Id.</u> Similarly, "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and "statements that were made under

---

[10]The Confrontation Clause provides that "[I]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.

circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," fall within the "core class" of testimony. Id.

Admission of non-testimonial hearsay against criminal defendants is not governed by Crawford, but still violates the Confrontation Clause unless the statement falls within a firmly rooted hearsay exception, or otherwise carries a particularized guarantee of trustworthiness. Ohio v. Roberts, 448 U.S. 56, 66 (1980).[11] A hearsay exception is firmly rooted if, "in light of longstanding judicial and legislative experience [the exception] rests on such a solid foundation that admission of virtually any evidence within it comports with the substance of the constitutional protection." Lilly v. Virginia, 527 U.S. 116, 126 (1999).

In this case, the evidence adduced at trial reveals that the movant and fifteen codefendants were trafficking in narcotics in a section of Opa Locka known as "the Triangle." (Cr-DE#517:107-14,201). The movant's role in the conspiracy was not initially obvious during the early stages of the investigation which began in March, 2001. (Cr-DE#517:113-15). During the initial investigation, agents identified an apartment located in the Triangle at 1761 Ali

---

[11] Crawford does supercede Roberts insofar as testimonial hearsay is concerned as the Roberts formulation remains applicable to non-testimonial statements. See United States v. Franklin, 415 F.3d 537, 546 (6th Cir. 2005)(explaining that with respect to non-testimonial statements, the Roberts formulation remains the controlling precedent, under which non-testimonial statements are constitutionally admissible if they "bear independent guarantees of trustworthiness"); United States v. Saget, 377 F.3d 223, 227 (2d Cir. 2004)(stating that "Crawford leaves the Roberts approach untouched with respect to non-testimonial statements").

Baba Avenue which was used as a drug hole.[12] (Id.). Coconspirators Ronald Ellington and Mustafa Muhammad were operating the Ali Baba drug hole. (Cr-DE#517:113-15,139-41). Ellington, a long-time drug dealer who sold crack cocaine, cocaine, and marijuana at various locations, opened the Ali Baba drug hole in 2000, along with Levar Williams and Mustafa Muhammed. (Cr-DE#517:212-26, 311-13).

The movant was first suspected of being one of Ellington's suppliers on June 26, 2001, when the movant met Ellington and a CI at a Burger King, at which time the movant supplied the CI with drugs. (Cr-DE#517:132-39,243-45). Although Ellington had other drug sources, he bought 75% of his cocaine from the movant, because the movant was a reliable supplier who always had access to high quality narcotics. (Cr-DE#517:201, 231-37,321-25). Ellington testified that he purchased varying quantities of cocaine from the movant on at least 50 occasions, which would then be distributed throughout Miami and Gainesville. (Cr-DE#517:228-30,235-40,266-68).

When the movant was not available or otherwise incarcerated, Ellington would deal with the movant's assistants. (Cr-DE#517:210,247-52; Cr-DE#518:500,504-05). The movant employed Michael T. Griffon, who distributed the movant's cocaine to Ellington and others in the Liberty City, Overtown, Coconut Grove, and Opa Locka areas of Miami-Dade County, and also supplied individuals in Broward and parts of north Florida. (Cr-DE#157:176-77,201,321-24). The movant also employed his nephew, Johnny Weeks, who delivered drugs and collected monies from over 50 of the movant's clients. (Cr-DE#518:286-391,401-02). In exchange, the movant paid Weeks between $500.00 and $2,000.00 per week, and

---

[12]A drug hole is a location where street level sales of personal use amounts of narcotics sales occur with a high level of frequency. (Cr-DE#517:105-06).

allowed Weeks to retain a percentage of the profits from his sales. (Cr-DE#518:396).

During the 106 electronically monitored phone calls between Griffin and the movant, the movant engaged in coded discussions regarding drug trafficking, and task force agents learned that the movant was the drug supplier, while Griffin and Weeks both worked for the movant. (Cr-DE#157:164-67; Cr-DE#518:398-400). Both Weeks and Ellington confirmed that they used coded language when speaking about drug trafficking over the phone. (Cr-DE#517:245-46); Cr-DE#518:398-400).

After the indictment was returned in February, 2002, the movant disappeared, and agents were unable to locate him until August 22, 2003, when he was arrested on other charges in Virginia, and his identity confirmed through fingerprint analysis. (Cr-DE#517:37; Cr-DE#510:374).

In this case, both coconspirators Weeks and Ellington confirmed that coded words were used to discuss drug trafficking. Officer O'Rourke's testimony thus appears to be cumulative to that of the cooperating witnesses. Even if O'Rourke's testimony did violate the movant's confrontation rights, the movant is still entitled to no relief on the claim because he cannot demonstrate that the admission of this testimony had a substantial influence on the jury's decision to convict. Under these circumstances, the movant has failed to establish prejudice pursuant to Strickland v. Washington, 466 U.S. 668 (1984) arising from counsel's failure to pursue this claim.

In **claim four**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to object to

references by O'Rourke that the confidential informant identified the movant using a photograph taken from the movant's driver's license. (Cv-DE#1:5; Cv-DE#2:13-15).

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968); see also Jones v. Kemp, 794 F.2d 1536, 1539 (11th Cir. 1986); Stovall v. Denno, 388 U.S. 293, 302 (1967)(A pretrial identification and subsequent in-court identification may amount to a due process violation if the pretrial procedure was unnecessarily suggestive and conducive to irreparable mistaken identification.

Florida and federal courts employ the same standard to determine if an out-of-court identification should be excluded: 1) did the police employ an unnecessarily suggestive procedure in obtaining it; and 2) if so, considering all the circumstances, was a likelihood of irreparable misidentification thereby created. Manson v. Braithwaite, 432 U.S. 98 (1977); Neil v. Biggers, 409 U.S. 188 (1972); Chihora v. Dugger, 840 F.2d 893 (11 Cir. 1988); Grant v. State, 390 So.2d 341, 343 (Fla. 1980), cert. denied, 451 U.S. 913 (1981). Factors to be considered in assessing the likelihood of misidentification include:  1) the witness' opportunity to view the defendant at the time of the crime, 2) the witness' degree of attention, 3) the accuracy of the description, 4) the level of certainty demonstrated by the witness, and 5) the length of time between the crime and the confrontation.  Neil v. Biggers, supra, at 199.  In this case, the movant has failed to establish that his out-of-court identification was unduly

suggestive. To the contrary, even absent this information, testimony from cooperating witnesses clearly establish the movant's role in this drug conspiracy. Ellington testified he was present with the confidential source purchased drugs from the movant on several occasions. O'Rourke's testimony was thus not an in-court identification, but rather a summary of the events surrounding the conspiracy. Under these circumstances, counsel was not ineffective for failing to pursue this nonmeritorious claim.

The movant alternatively claims that O'Rourke's testimony also violated his confrontation rights because the identity of the informant was not disclosed nor was the informant called as a government witness at trial. (Cv-DE#2:13-15).

As discussed previously in this Report, given the overwhelming evidence adduced at trial implicating the movant in the offenses of conviction, there is no reasonable probability, that had the confidential informant's identity been disclosed, the outcome of the guilt phase portion of his trial would have resulted in an acquittal of all charges. The informant's testimony as proffered by the movant would not "significantly aid in establishing an asserted defense," and the movant's "mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure" of the informant's identity. United States v. Kerris, 748 F.2d 610, 614 (11th Cir. 1984) (citations omitted).

Moreover, the government is not required to disclose the identity of an informant who is a mere tipster and not an active participant in the offense charged. See Bourbois v. United States, 530 F.2d 3 (5 Cir. 1976); United States v. Clark, 482 F.2d 103 (5th Cir. 1973); United States v. Herrera, 455 F.2d 157 (5th Cir. 1972); United States v. Mendoza, 433 F.2d 891 (5th Cir. 1970), cert.

denied, 401 U.S. 943 (1971).

In <u>Roviaro v. United States</u>, 353 U.S. 53 (1957), the Supreme
Court held that the government is required to disclose an
informant's identity when the informant's communications with the
defendant are relevant and helpful to the defense of the accused.
"Whether ... nondisclosure [is] erroneous [,however,] must depend
on the particular circumstances of each case, taking into
consideration the crime charged, the possible defenses, the
possible significance of the informant's testimony, and other
relevant factors." <u>Id.</u> at 62. There is nothing of record to
suggest that disclosure of the identity of the confidential
informant was relevant or would have assisted the movant in his
defense. Consequently, the movant cannot demonstrate prejudice
stemming from counsel's failure to pursue this claim at trial or on
appeal. <u>See</u> <u>Strickland v. Washington</u>, <u>supra.</u>

In **claim five**, the movant asserts that he was denied effective
assistance of counsel, where his lawyer failed to exclude
nonessential witnesses from the courtroom and to request inquiry
into the violation of the sequestration rule. (Cv-DE#1:6; Cv-
DE#2:17). Specifically, the movant claims that Detective Frank
Alphonso with the Miami-Dade Police Department, and Investigator
Howard Hartung with the Richmond County Sheriff's Office, should
have been excluded from the courtroom. (Cv-DE#2:17).

When a violation of the sequestration rule occurs, the court
may respond in one of three ways: (1) it may cite the guilty party
for contempt; (2) it may allow opposing counsel to cross-examine
the witnesses as to the nature of the violation; or (3) where
counsel or the witness violate the rule intentionally, the court
may strike testimony already given or disallow further testimony.

24

United States v. Diaz, 248 F.3d 1065, 1104 (11th Cir. 2001), citing, United States v. Lattimore, 902 F.2d 902, 904 (11th Cir. 1990). However, a witness's violation of a sequestration order does not automatically require exclusion of that witness's testimony. United States v. Monaco, 702 F.2d 860, 871 (Fla. 1983), citing, Holder v. United States, 150 U.S. 91, 92 (1893); United States v. Warren, 578 F.2d 1058, 1076 (5th Cir. 1978), cert. den'd, 446 U.S. 956 (1980). "Failure of a witness to comply with the sequestration rule does not of itself render his testimony inadmissible, although it may affect the weight of the testimony; whether such a witness is to be permitted to testify is generally left to the sound discretion of the trial court." United States v. Suarez, 487 F.2d 236, 238 (5th Cir. 1973), cert. den'd, 415 U.S. 981 (1974).

Review of the record reveals that following a brief recess during the cross-examination of Ronald Ellington, which occurred after opening statements, and following the testimony from Agent O'Rourke, the government advised the court that it was "unsure" whether the sequestration rule had been invoked, but regardless, requested that it be invoked at that time. (Cr-DE#517:285). Defense counsel also joined in the request, at which time the court granted the request and invoked the rule. (Id.:285-86). In this case, however, no showing has been made by the movant that there were any witnesses present in the courtroom, other than agents involved in the case or the movant himself. Notwithstanding, even if witnesses had been present, no prejudice has been established arising from counsel's failure to invoke the rule earlier. It is clear that even if a witness was in the courtroom during the testimonies of O'Rourke and Ellington, no showing has been made that the court would have stricken the testimony. Thus, absent a showing of prejudice, the movant is not entitled to relief on this claim.

Moreover, the movant's assertions that the testimonies of Detective Alphonso and Investigator Hartung were designed to comport with the information they had learned from the government during opening statements and the witnesses' testimony prior to the rule being invoked is patently frivolous. It is clear from the record that the witnesses testified regarding their role in the investigation and prosecution of the movant, including the movant's flight and the events surrounding his arrest in Georgia. See Cr-DE#517:95-189; Cr-DE#510:4-20). Defense counsel cross-examined both witnesses extensively regarding their recollection of the facts. Under these circumstances, no showing has been made the movant was prejudiced from counsel's alleged failure to invoke the rule prior to opening statements.

The movant further claims that counsel failed to advise the court that incarcerated witnesses were communicating with each other while they were still under oath, in violation of the sequestration rule. (Cv-DE#2:17). No showing has been made, other than the movant's self-serving statements in this regard, that these witnesses knowingly violated the sequestration order once it was invoked. Moreover, even if that were the case, again, the movant has failed to demonstrate that the court would have stricken their testimonies. Under these circumstances, the movant cannot establish prejudice arising from counsel's failure to pursue this issue at trial or on appeal, and he is thus entitled to no relief on this claim.

In **claim six**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to object to the admission of flight evidence and to the jury instruction on flight. (Cv-DE#1; Cv-DE#2:21). This claim is belied by the record.

Review of the record reveals that counsel did, in fact, object to the admission of evidence that the movant fled to Georgia in order to avoid arrest following the return of the Indictment in the underlying criminal case under attack here. See Cr-DE#517:69-74. At trial, both Agent O'Rourke and Agent Alphonso testified regarding their efforts to locate the movant after he fled to Georgia following the return of the federal Indictment. (Cr-DE#s517:188-89; Cr-DE#510:18-20). Testimony regarding the movant's flight and the subsequent efforts from law enforcement to locate the movant's whereabouts were admissible. It is well settled that evidence of flight is admissible to demonstrate consciousness of guilty and thereby guilt. United States v. Blakey, 960 F.2d 996, 1000 (11th Cir. 1992); United States v. Beard, 775 F.2d 1577, 1581 (11th Cir. 1985)(evidence of flight can raise consciousness of guilty). Thus, any objection to the evidence or the court's instruction in this regard would not have succeeded.

Given the substantial evidence presented at trial from which the movant's guilt could be inferred, no showing has been made that the jury's verdict would have been different if such evidence had not been admitted and the flight instruction not given. Its inclusion was relevant to establish the movant's consciousness of guilt. Thus, its admission did not have a substantial impact on the outcome of the case, and no prejudice, pursuant to Strickland, has been established arising from counsel's failure to pursue this issue.

To the extent the movant means to argue that he provided counsel with information prior to trial which would have weakened the evidentiary value of the flight evidence, the movant is still entitled to no relief on the claim. According to the movant, counsel could have argued that the reason for the flight did not

arise from the underlying criminal charges, but from the movant's state charges for driving with a suspended license. (Cv-DE#2:25). Even if counsel had pursued this argument, no showing has been made in this collateral proceeding that the court would have excluded the flight evidence on that basis. Under these circumstances, the movant is entitled to no relief on this claim.

In **claim seven**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to request a limiting instruction as to drug quantity. (Cv-DE#1; Cv-DE#2:25). The movant appears to argue that the court's instruction relating to the time period of the conspiracy in essence constructively amended the indictment. (Cv-DE#2:25-27).

The Fifth Amendment guarantees a defendant the right to be tried for only those offenses presented in an indictment and returned by a grand jury. United States v. Cancelliere, 69 F.3d 1116, 1121 (11th Cir. 1995). An impermissible amendment to an indictment occurs "when the essential elements of the offense are altered to broaden the possible bases for conviction beyond what is contained in the indictment." Id. (quotation marks omitted). "A jury instruction that constructively amends a grand jury indictment constitutes per se reversible error because such an instruction violates a defendant's constitutional right to be tried on only those charges presented in a grand jury indictment and creates the possibility that the defendant may have been convicted on grounds not alleged in the indictment." Id.

The movant maintains that the district court amended the indictment when it instructed the jury that the government was not required to prove the exact date of the conspiracy, but rather it was sufficient if the government proved beyond a reasonable doubt

that the offense was committed on a date reasonably near the date alleged in the Indictment. In other words, the movant claims that the court's jury instruction changed the amount of drugs as charged in the Indictment to any measurable amount which was adduced at trial and outside the time period of the charged conspiracy.

In this case, the movant has failed to demonstrate that this instruction was error or that any alleged error affected his substantial rights. The movant's indictment charged a conspiracy involving a drug quantity of five kilograms or more of a mixture and substance containing a detectable amount of cocaine. (Cr-DE#1). As previously discussed in this Report, the government presented evidence that the movant's drug conspiracy during the time period charged involved amounts of cocaine well in excess of five kilograms. Through the special verdict form, the jury found beyond a reasonable doubt that the conspiracy involved five kilograms or more of cocaine. (Cr-DE#494). In short there is no doubt that the movant was convicted of the offense charged in the Indictment. To the contrary, the jury's special verdict form makes it clear that the jury's verdict was completely consistent with the Indictment. Under these circumstances, no deficient performance or prejudice has been established arising from counsel's failure to pursue this issue.

In **claim eight,** the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to request a missing witness instruction. (Cv-DE#1; Cv-DE#2:31). The movant maintains that counsel should have requested this instruction because the government interviewed and debriefed the following coconspirators: Natosha Brownlee, Levar Williams, and Conrad Thomas, but the witnesses refused to be interviewed by defense counsel because of their cooperating agreements with the

government. (Cv-DE#2:31-32).

"[I]f a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." Graves v. United States, 150 U.S. 118, 121 (1893). "When a witness is peculiarly within the control of one party, and that witness' testimony would elucidate facts in issue, an instruction is appropriate regarding the permissible inference which the jury may draw from the party's failure to call the witness." United States v. Nahoom, 791 F.2d 841, 846 (11th Cir. 1986).

To receive a missing witness instruction, a defendant must demonstrate (1) the potential witness' unavailability in a physical or practical sense; and (2) that the witness' testimony would be relevant and not merely cumulative. Jones v. Otis Elevator Co., 861 F.2d 655, 659 (11th Cir. 1988); United States v. Valles, 41 F.3d 355, 360 (7th Cir. 1994). An inference from a party's failure to call a witness equally available to both parties is impermissible. United States v. Chapman, 435 F.2d 1245, 1247 (5th Cir. 1971). A party who may or may not invoke the Fifth Amendment is equally available to either party. Id. at 1247-48. Moreover, a district court is not required to give the missing witness instruction to the jury if the witness would testify against the interests of the defendant. United States v. Link, 921 F.2d 1523, 1529 (11th Cir. 1991).

In this case, the movant has not met his burden of showing that the missing witness instruction should have been given. First, he has not demonstrated that the three witnesses were "peculiarly within the control" of the government and unavailable to him. It

also does not appear that Lavar Williams was indicted in this case, nor has it been demonstrated that he was cooperating with the government. Nothing in the record indicates that the movant made any attempts to locate and subpoena these witnesses. It is further not known whether these witnesses would have invoked their Fifth Amendment privilege if called, and thus, were equally available to both the movant and the government. See Chapman, 435 F.2d at 1247-48.

Likewise, the movant has failed to meet his burden of showing that the missing witness instruction should have been given because he has not shown how these witnesses' testimony would have been favorable to him. Even if counsel had requested such an instruction, no showing has been made that the instruction would have been given. Under these circumstances, the movant is entitled to no relief on this claim because he has failed to demonstrate either deficient performance or prejudice under Strickland.

To the extent the movant means to argue that these witnesses should have been called to testify at trial as defense witnesses because they possessed exculpatory information, that claim fails on the merits. The movant has not provided any affidavit or other information demonstrating that the witnesses would have testified as proffered. In fact, even if the witnesses would have been called to testify on behalf of the movant, no showing has been made in this collateral proceeding that their testimonies would have assisted in the movant's defense and resulted in an acquittal of all charges. Under these circumstances, counsel's strategic decision in not further pursuing the testimony of these witnesses should not be second-guessed. Thus, the movant is entitled to no relief on this claim.

In **claim nine**, the movant asserts that counsel's cumulative errors warrant vacatur of his conviction. (Cv-DE#1; Cv-DE#2:36).


For the reasons stated in this Report, the movant is not entitled to vacatur on any of the claims presented. When viewing the evidence in this case in its entirety, the alleged errors, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the movant a fundamentally trial and due process of law. The movant therefore is not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the movant's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

In **claim ten**,[13] the movant asserts that he was denied effective

---

[13]This claim was first raised in the movant's "Notice of Intent" dated August 17, 2007. (Cv-DE#15). The claim does not appear to relate back to the original timely filed motion and thus should be time-barred. See, Davenport v. United States, 217 F.3d 1341 (11 Cir. 2000). In Davenport, the Eleventh Circuit held that to relate back under Rule 15(c), "the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." Subsequently, in Dean v. United States, 278 F.3d 1218 (11 Cir. 2002), the Eleventh Circuit held that Congress intended rule governing relation back of amendments of pleadings to be used for a relatively narrow purpose, one of which is to fill in facts missing from the original claim. See, also Farris v. United States, 333 F.3d 1211 (11 Cir. 2003).

The movant's conviction became final on January 23, 2006, when certiorari review was denied by the Supreme Court following the affirmance of the movant's

assistance of trial and appellate counsel, where his attorneys failed to: (a) object to the impermissibly vague §851 information; and, (b) challenge the lawfulness of the October/November wiretaps. (Cv-DE#15).

The movant first claims that his attorneys were ineffective for failing to object to the government's §851 information on the basis that it was "vague." (Cv-DE#15).

Title 21 U.S.C. §851(1) provides as follows:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon....

A defendant may not receive an enhanced sentence pursuant to 21 U.S.C. §851 unless prior to trial, the government files an information signifying its intent to rely on a prior drug conviction and serves such information upon the defendant. United States v. Weaver, 905 F.2d 1466, 1481 (11 Cir. 1990), cert. den'd, 498 U.S. 1091 (1991). The Eleventh Circuit insists upon strict compliance with the mandatory language of the procedural requirement of §851. Id. Filing and serving the information prior to selection of the jury is sufficient. Id. Moreover, the Eleventh Circuit has he that once an information is filed, it need not be

---

convictions and sentences on direct appeal. See Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); Kaufman v. United States, 282 F.3d 1336 (11 Cir. 2002). His initial motion to vacate was timely filed on January 21, 2007. (Cv-DE#1). The August 17, 2007 amendment is not timely as it is filed over one year beyond the expiration of the federal one year period of limitations. Notwithstanding the untimeliness of the claim, as discussed in this Report, the claim also fails on the merits.

refiled following each consecutive trial. See <u>United States v.</u> <u>Williams</u>, 59 F.3d 1180, 1184-85 (11th Cir. 1995)(Finding no §851 violation where information was filed after mistrial of second trial, but prior to third trial.); <u>accord</u>, <u>United States v.</u> <u>Mayfield</u>, 418 F.3d 1017, 1020-21 (9th Cir. 2005).

In this case, the government filed a notice of intent to seek an increased sentence pursuant to 21 U.S.C. §851 on October 23, 2003, with a copy mailed to defense counsel.[14] (Cr-DE#420). Jury voir dire commenced on March 22, 2004. (Cr-DE#479). It is clear that the notice was filed prior to jury selection and that a copy was provided to counsel. Under these circumstances, no deficient performance or prejudice has been established arising from counsel's failure to pursue this issue pretrial or on appeal. The movant is thus entitled to no relief on this claim.

The movant also asserts that his attorneys were ineffective for failing to adequately challenge the lawfulness of the wiretaps pretrial and on appeal. (Cv-DE#15).

The substantive issue underlying this ineffective assistance counsel claim was raised and rejected on direct appeal. See <u>United</u> <u>States v. Cannon</u>, 149 Fed.Appx. 937, 941 (11th Cir. 2005); (Cr-DE#552). The appellate court found no abuse of discretion in admitting the wiretap evidence where the affidavit in support thereof was sufficient and established various detailed investigative tools and techniques used during the course of the investigation; explained why previous techniques were unsuccessful;

_____

[14]The §851 information also enumerated and provided copies of judgments for at least six of the movant's prior convictions upon which the government was relying in support of its request that the movant's sentence be enhanced in the event of a conviction. The prior convictions have not been vacated and were lawfully used to support the enhanced sentence.

and detailed techniques other than the use of a wiretap that had
not been used because they were either unlikely to succeed or too
dangerous to implement. Cannon, supra at 941. Thus, the
presentation of the claim in this §2255 proceeding in the guise of
an ineffective assistance of counsel claims adds nothing of
substance which would justify a different result. See Hobson v.
United States, supra.

The movant's final request for an evidentiary hearing on his
claims of ineffective assistance of counsel should be denied. A
hearing is not required on patently frivolous claims or those which
are based upon unsupported generalizations or affirmatively
contradicted by the record. See Holmes v. United States, 876 F.2d
1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588
F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this
Report, the claims raised are unsupported by the record or without
merit. Consequently, no evidentiary hearing is required.

<u>Conclusion</u>

It is therefore recommended that the motion to vacate be
denied.

Objections to this report may be filed with the District Judge
within ten days of receipt of a copy of the report.

Signed this 12th day of October, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Troy Cannon, <u>Pro Se</u>
     Reg. No. 35707-019
     F.C.C.-Coleman
     P.O. Box 1034
     Coleman, FL 33521

35

Benjamin G. Greenberg, AUSA
U.S. Attorney's Office
99 N.E. 4th Street
Miami, FL 33132